**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROBEL SOLOMON,<br><br>Plaintiff,<br><br>v.<br><br>RELIANTCY, INC., *et al.*,<br><br>Defendants. | ) | Civil Action No. 24-cv-02753-LKG<br><br>Dated: September 11, 2026<br><br>**RE-ISSUED** |

**MEMORANDUM OPINION**[1]

## I. INTRODUCTION[2]

In this civil action, the Plaintiff, Robel Solomon, brings claims against the Defendants, Reliantcy, Inc., Reliantcy, LLC, (collectively, "Reliantcy") and Jay Mesmer, as the Trustee for Reliantcy, pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. (the "FCRA"), arising from an employment background check report that the Defendants published to the Plaintiff's future employer. *See generally* ECF No. 1. The Plaintiff has moved for partial summary judgment on several issues related to these claims, pursuant to Fed. R. Civ. P. 56. *See generally* ECF No. 25. The Defendants have also filed a cross-motion for summary judgment on these claims, pursuant to Fed. R. Civ. P. 56. *See generally* ECF No. 26. In addition, the parties have filed a consent motion to seal Exhibits Q, R, and S of the joint record in this case. ECF No. 30.

No hearing is necessary to resolve the motions. *See* L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS-IN-PART** and **DENIES-IN-PART** the Plaintiff's motion for partial summary judgment (ECF No. 25); (2) **GRANTS-IN-PART** and **DENIES-IN-PART** the Defendants' cross-motion for summary judgment (ECF No. 26); (3) **GRANTS** the parties' joint motion to seal Exhibits Q, R and S of the joint record (ECF No.

[1] The Court initially issued this opinion under seal on September 11, 2026, to allow the parties to review the opinion and request any redactions of sensitive information. ECF No. 33. On October 15, 2026, the parties filed a joint status report stating that they do not seek any redactions. ECF No. 38. And so, the Court issues the public version of this opinion without redactions.

[2] The Court has entered a Protective Order in this matter and the parties have filed certain exhibits to the joint record under seal. These exhibits are briefly addressed in this Memorandum Opinion. And so, out of abundance of caution, the Court files this Memorandum Opinion under seal.

30); (4) **DETERMINES** that the Background Report and Revised Background Report are inaccurate as to the status of the Plaintiff's criminal cases; and (5) **LIMITS** the Plaintiff's damages to economic damages.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. Factual Background

In this civil action, the Plaintiff brings FCRA claims against the Defendants arising from an employment background check report that the Defendants published to the Plaintiff's future employer, Challenger Transportation, Inc. ("Challenger"). *See generally* ECF No. 1. Specifically, the Plaintiff asserts the following claims against the Defendants in this case: (1) Violation of 15 U.S.C. § 1681e(b)-failure to follow reasonable procedures to assure maximum possible accuracy (Count I) and (2) Violation of 15 U.S.C. § 1681i-failure to perform reasonable reinvestigation (Count II). *Id.* at ¶¶ 120-136. As relief, the Plaintiff seeks a Court Order determining that Reliantcy negligently and/or willfully violated the FCRA, an award of statutory and punitive damages under the FCRA, and to recover reasonable attorney's fees and costs from the Defendants. *Id.* at Prayer for Relief.

The Parties

Plaintiff Robel Solomon is a resident of Maryland. *Id.* at ¶ 20.

Defendant Reliantcy, Inc. is a dissolved Colorado corporation that provided background check services. *Id.* at ¶¶ 21–22; ECF No. 7 at ¶¶ 21–22.

Defendant Reliantcy, LLC is a California corporation and the successor-in-interest to Defendant Reliantcy, Inc. ECF No. 1 at ¶¶ 21–22; ECF No. 7 at ¶¶ 21–22.

Defendant Jay Mesmer is a resident of California and the managing partner and owner of Defendant Reliantcy, LLC. ECF No. 1 at ¶¶ 24–25 and 27; ECF No. 7 at ¶¶ 24–25 and 27.

Reliantcy

As background, Reliantcy is a consumer reporting agency, as defined in Section 1681a(f) of the FCRA, that sells background checks to its clients. ECF No. 25-2 at ¶¶ 1-2 (Joint Statement of Facts). Defendant Lawrence Jay Mesmer was the managing partner of Reliantcy, Inc., prior to its dissolution, and he is the managing member of Reliantcy, LLC. *Id.* at ¶ 3.

Reliantcy sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action, such as termination,

---

[3] The facts recited in this Memorandum Opinion are taken from the complaint (ECF No. 1); the parties' joint statement of undisputed facts (ECF No. 25-2); and the joint record (ECF Nos. 28-1 and 29-1).

failure to hire, or failure to promote. *Id.* at ¶ 4. During the time period relevant to this case, Reliantcy used a "Reliantcy Background Training Guide" (the "Training Guide"), which contains the company's policies and procedures for preparing background reports for its clients. *Id.* at ¶ 5.

The Training Guide provides that "Background Checks are used to determine if an individual has any criminal history, confirm that the information they have provided on their employment application is true, and provide clues to whether the individual be hirable according to company standards." ECF No. 29-1 at 392. Relevant to this dispute, the Training Guide also explains that:

> *Nolle Prosequi* is a Latin phrase meaning "will no longer prosecute." Not guilty. Case was dropped, not enough evidence. Other party is not pursuing case anymore. It amounts to a dismissal of charges by the prosecution. <u>Always release these to the client.</u>

ECF No. 29-1 at 132 (J.R. 390).

The parties agree that the first step that Reliantcy takes in preparing a background report is to receive an online request from its client seeking a background report. ECF No. 1 at ¶ 6. Once the client's request is received, the request is sent to one or more of Reliantcy's third-party vendors to execute the search. *Id.* at ¶ 7.

After Reliantcy receives data from its vendors, Reliantcy ensures that the candidate or employee's social security number, address and date of birth match any criminal charges that appear. *Id.* at ¶ 8. And so, once this review process is complete, Reliantcy notifies its client that the report is completed. *Id.* at ¶ 9.

The parties disagree about whether Reliantcy's procedures for ensuring that its background reports are accurate are reasonable. In this regard, the Plaintiff contends that the procedures in place at the relevant time were not reasonable, because, among other things, the company had no procedure for excluding duplicative criminal records that may appear on a background check report. ECF No. 25-1 at 22. The Plaintiff also contends that the evidence shows that the national criminal checks performed by Reliantcy's vendors are less reliable than a county criminal check. *Id.* (citing ECF No. 29-1 (Mesmer Deposition, Ex. R at 27–37, J.R. 375–85)).

The Defendants maintain, however, that Reliantcy's procedures are reasonable, because there is no evidence in this case to show that the national search results from its vendor, Trade House Data, were implausible or inconsistent. ECF No. 26-1 at 6. The Defendants

also contend that Reliantcy had no other reason to believe that the data in the background report at issue in this case required further verification. *Id.*

<u>The Plaintiff's Background Check</u>

It is undisputed that, in late 2023, Reliantcy provided a background check report for the Plaintiff. In this regard, the parties agree that, on December 5, 2023, the Plaintiff received an offer of employment from Challenger Transportation, Inc. that was contingent upon, among other things, his passing a background check. ECF No. 25-2 at ¶¶ 10-11; ECF No. 25-1 at 9–10; ECF No. 29-1 at 199; ECF No. 26-1 at 3. And so, on December 5, 2023, Challenger ordered a background check (the "Background Check") on the Plaintiff from Reliantcy. ECF No. 25-2 at ¶ 16.

Challenger requested that Reliantcy provide both a national database search and local county search. *Id.* And so, Reliantcy automatically sent Challenger's request for the Background Check to its third-party vendor, Trade House Data, to execute the requested searches. *Id.* at ¶ 17. Once the requested searches were completed, the search results were submitted back to Reliantcy's system. *Id.*

On December 6, 2023, Reliantcy's processor, Amy Franchek, received the completed search results for the Plaintiff's Background Check from Reliantcy's vendors. *Id.* at ¶ 18. And so, Reliantcy releases the Background Report to Challenger on that same date. *Id.* at ¶ 19.

The Background Report contains, among other things, a list of criminal cases associated with the Plaintiff that were brought in either the Maryland circuit courts or district courts. ECF No. 28-1 at 202-205. In this regard, the Background Report lists seven criminal cases, under the heading "Maryland Administrative Office Of Courts Circuit Courts Offender," that were brought against the Plaintiff in the circuit courts of Maryland, arising from offenses that occurred on March 5, 2020. *Id.* at 202-204. The Background Report also identifies "other related cases" that are associated with these cases. *Id.*

In addition, the Background Report lists seven criminal cases under the heading "Maryland Administrative Office Of Courts District Courts Offender," that were brought against the Plaintiff in the district courts of Maryland, arising from offenses that occurred on March 5, 2020. *Id.* at 204-205. The Background Report also identifies "other related cases" that are associated with these cases. *Id.* Lastly, the Background Report provides that the status of each of the cases is "OPEN." ECF No. 29-1 at 202-205.

It is undisputed that the seven cases listed under the heading "Maryland Administrative Office Of Courts Circuit Courts Offender" are the same seven cases that are also listed in the Background Report under the "Maryland Administrative Office Of Courts District Courts Offender." ECF No. 25-1 and ECF No. 26-1. And so, the parties agree that the Background Report contains duplicative criminal cases related to the Plaintiff and that there are only seven criminal cases in the Plaintiff's criminal history. ECF No. 25-1 at 13-14; ECF No. 26-1 at 8.[4] It is also undisputed that each of these case were resolved as *nolle prosequi.* ECF No. 25-1 at 9; ECF No. 26-1 at 20.

On December 7, 2023, the Plaintiff received an email from Challenger stating that he was disqualified from working for Challenger due to the Background Check, along with a copy of the Background Check. ECF No. 25-2 at ¶ 20. And so, the Plaintiff called Reliantcy about the Background Check. *Id.* at ¶ 21.

On December 8, 2023, the Plaintiff spoke Amy Franchek, and informed Ms. Franchek that the criminal cases reported in the Background Check were not "open" and had been "expunged." *Id.* at ¶ 22. And so, Ms. Franchek requested that the Plaintiff email her court documentation to show that the cases had been expunged. *Id.* at ¶ 23.

On December 8, 2023, Ms. Franchek emailed an employee of Challenger, Gemma Gray, and informed Ms. Gray that the Plaintiff had contacted her regarding the Background Check and that she had requested that the Plaintiff provide supporting court documentation. *Id.* at ¶ 24. Ms. Franchek also asked whether Ms. Gray would like Reliantcy to run a county search for Baltimore County and Ms. Gray requested that Ms. Franchek await the response from the Plaintiff before conducting another search. *Id.*

On December 8, 2023, the Plaintiff provided Ms. Franchek with a court document reflecting that the Circuit Court for Baltimore County had granted his motion to suppress evidence in the subject criminal cases. *Id.* at ¶ 25. Ms. Franchek provided the document to Ms. Gray and Ms. Gray responded that the document would not be accepted by Challenger, because it does not show the Plaintiff's name or case number. *Id.* at ¶ 26. And so, Ms. Franchek informed the Plaintiff *via* email that the court document would not be accepted by Challenger, because it does not show the Plaintiff's name or case number. *Id.* at ¶ 27.

<u>The Plaintiff's Revised Background Check</u>

[4] It is undisputed that an individual who is charged with a misdemeanor in the State of Maryland will begin his or her case in a district court and, if a jury trial is requested, the case will be transferred to a circuit court. ECF No. 26-1 at 7-8.; ECF No. 25-1.

On December 12, 2023, the Plaintiff sent Reliantcy a court document showing that the charges in his criminal cases were "*nolle prosequi*," and he requested that Reliantcy correct the Background Report and send revised report to Challenger. *Id.* at ¶ 28. Reliantcy confirmed receipt of the Plaintiff's request and sent the court document to Challenger. *Id.*

Ms. Franchek emailed the court document to Challenger on December 12, 2023, and Reliantcy revised the Plaintiff's Background Report (the "Revised Background Report"). *Id.* at ¶ 29. The Revised Background Report provides that the status of the Plaintiff's criminal cases is "CLOSED." *Id.* at ¶ 32; ECF No. 29-1 at 234-237. On December 20, 2023, the Plaintiff requested a copy of the Revised Background Check and Reliantcy provided this report to the Plaintiff on December 21, 2023. *Id.* at ¶¶ 30 and 31.

<u>The Plaintiff Is Hired By Challenger</u>

Following its review of the Revised Background Check, Challenger reinstated the Plaintiff's offer of employment. *Id.* at ¶ 33. And so, the Plaintiff began employment with Challenger as a para-transit vehicle operator on January 8, 2024. *Id.*

The Plaintiff alleges that he lost three weeks of wages as an employee of Challenger, in the amount of $2,427.20, due to the Defendants' conduct related to the Background Report. *Id.* at ¶ 34. In this regard, it is undisputed that the Plaintiff's contingent offer of employment from Challenger provides that he would be paid $16.70 per hour for a 40-hour training period, and $21.99 per hour thereafter. ECF No. 28-1 at 199.

Lastly, the Plaintiff alleges that he suffered from anxiety, loss of sleep and mental anguish, as a result of his concern about not getting the job at Challenger due to the Background Report. ECF No. 25-1 at 15. And so, the Plaintiff seeks a Court Order determining that Reliantcy negligently and/or willfully violated the FCRA, an award of statutory and punitive damages under the FCRA, and to recover reasonable attorney's fees and costs from the Defendants. *Id.* at Prayer for Relief.

**B. Relevant Procedural Background**

The Plaintiff commenced this civil action on September 24, 2024. ECF No. 1. On October 31, 2024, the Defendants answered the complaint. ECF No. 7.

On November 21, 2025, the Plaintiff filed a motion for partial summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF Nos. 25 and 25-1. On December 12, 2025, the Defendants filed a response in opposition to the Plaintiff's motion for partial summary judgment motion and a cross-motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF Nos. 26 and 26-1.

On January 6, 2026, the Plaintiff filed a response in opposition to the Defendants' cross-motion for summary judgment and a reply brief. ECF No. 27. The parties filed the joint record on January 7, 2026. ECF Nos. 28-1 and 29-1.

The parties' cross-motions for summary judgment having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co*., 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.

1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.

When faced with cross-motions for summary judgment, the Court must review each motion separately on its own merit "to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n. 4 (1st Cir.1997) (citation and internal punctuation omitted). And so, when considering each motion, the Court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion. *See Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996).

**B. The FCRA**

Congress enacted the Fair Credit Reporting Act to ensure "fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA regulates how credit reporting agencies ("CRAs") collect and transmit credit-related information to ensure accuracy, and "[i]n enacting FCRA Congress adopted . . . measures designed to [e]nsure that agencies report accurate information . . . [such as giving] individuals the right to sue reporting agencies for" reporting inaccurate or incomplete information about them. *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001) (citation omitted); 15 U.S.C. § 1681i. In addition to regulating CRAs, the FCRA imposes duties on "furnishers of information" and prohibits any person from providing information to a CRA that they know is inaccurate. *See Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 147–48 (4th Cir. 2008) (citing 15 U.S.C. § 1681s–2(a)).

Relevant to the pending cross-motions, to prevail on a claim under Section 1681e(b) of the FCRA, a plaintiff must show that: "(1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton*, 257 F.3d at 415. In this regard, "[a] report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Id.* (citation omitted). And so, the "FCRA requires furnishers to . . . review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." *Saunders v. Branch Banking and Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008).

In addition, this Court has held "that a CRA follows reasonable procedures if it relies on information from a reputable source unless it has some notice of systemic problems with

the accuracy of its reports." *Jianqing Wu v. Trans Union*, No. 3-1290, 2006 WL 3629755, at *4 (D. Md. May 2, 2006). Courts have also held that "[w]hether a [CRA] followed reasonable procedures within the meaning of the FCRA will be a jury question in the overwhelming majority of cases." *Scott v. Resolve Partners, LLC*, No. 19-1077, 2023 WL 6388202, at *5 (M.D.N.C. Sep. 29, 2023) (quotation omitted).

In addition, Section 1681i of the FCRA "sets forth more detailed procedures for 'reinvestigating' an entry on a credit report once a reporting agency is put on notice that the information may be incomplete or inaccurate." *Thomas v. Mercedes Benz Credit Corp.*, No. AW-04-976, 2006 WL 8457059, at *5 (D. Md. June 27, 2006). To prevail on a claim under Section 1681i(a), a plaintiff must prove that: (1) he disputed the accuracy of an item in his credit file; (2) the CRA failed to conduct a reasonable investigation; and (3) a reasonable investigation would could have uncovered the inaccuracy. *Myrick v. Equifax Info. Servs, LLC,* No. 15-cv-00562, 2017 WL 3324467, at *5 (E.D.N.C. Aug. 3, 2017). While the FCRA does not define the term "reasonable reinvestigation," the Fourth Circuit has explained that reasonableness is assessed based upon weighing "the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information." *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 432 (4th Cir. 2004) (quotation omitted). And so, "judging the reasonableness of a consumer reporting agency's reinvestigation is normally within the province of the fact-finder, [but] summary judgment may be appropriate where a plaintiff has failed to adduce evidence that would tend to prove that a consumer reporting agency's reinvestigation was unreasonable." *Thomas*, 2006 WL 8457059, at *5.

Lastly, a Plaintiff may recover actual damages for negligent violations of the FCRA and punitive damages for willful violations of this statute. *Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328, 344 (4th Cir. 2023). "Actual damages may include not only economic damages, but also damages for humiliation and mental distress." *Sloane v. Equifax Info. Servs., LLC,* 510 F.3d 495, 500 (4th Cir. 2007). But a plaintiff must reasonably and sufficiently explain the circumstances of the injury and not resort to mere conclusory statements, to show that he is entitled to recover damages for humiliation and mental distress. *Id.* at 503.

## IV. ANALYSIS

The parties have filed cross-motions for summary judgment on several issues related to the Plaintiff's FCRA claims in this case. ECF Nos. 25 and 26. In his motion for partial summary judgment, the Plaintiff argues that he is entitled to summary judgment on certain aspects of his FCRA claims, because the undisputed material facts in this case show that: (1) the information contained in the Background Report and Revised Background Report

regarding his criminal cases is patently inaccurate and materially misleading; (2) Reliantcy did not follow reasonable procedures to assure maximum possible accuracy of the Background Report and Revised Background Report; (3) Reliantcy failed to conduct a reasonable investigation into his disputes; and (4) Reliantcy's inaccurate reporting and failure to conduct a reasonable investigation caused the him to sustain actual damages. ECF No. 25-1 at 12-25. And so, the Plaintiff requests that the Court grant his motion for partial summary judgment and enter partial summary judgment against the Defendants finding that: (1) the Defendants' reported inaccurate information in the Background Report and the Revised Background Report; (2) the Defendants negligently failed to maintain policies or procedures sufficient to assure maximum possible accuracy of the information in its background reports, in violation of Section 1681e(b) of the FCRA; (3) the Defendants negligently failed to conduct a reasonable investigation into his disputes; (4) the inaccuracies within the Background Report and Revised Background report would have been discovered had the Defendants conducted a reasonable investigation; and (5) Plaintiff sustained actual damages that were directly and proximately caused by the Defendants' FCRA violations. *Id.* at 26-27.

In their response in opposition to the Plaintiff's dispositive motion and cross-motion for summary judgment, the Defendants counter that the Plaintiff is not entitled to summary judgment on these issues, and that they are entitled to summary judgment on the Plaintiff's FCRA claims, because the undisputed material facts in this case show that: (1) the Plaintiff's FCRA claim based on the status of his criminal cases fails as a matter of law, because the Plaintiff presents no evidence to show that Reliantcy failed to follow reasonable procedures to assure maximum possible accuracy of the Background Report; (2) the Plaintiff's FCRA claim based upon duplicative reporting of his criminal cases also fails, because Reliantcy accurately reported the criminal cases as they were received; (3) Reliantcy's reinvestigation of the Plaintiff's dispute was reasonable; (4) Reliantcy is entitled to summary judgment on the issue of willful violation of the FCRA; and (5) the Plaintiff's damages are limited to his three weeks of lost wages, because his claimed non-economic damages are speculative. ECF No. 26-1 at 5-15. And so, the Defendants request that the Court deny the Plaintiff's motion for partial summary judgment and grant their cross-motion for summary judgment. *Id.* at 15.

Lastly, the Plaintiff argues that the Defendants are not entitled to summary judgment, because there can be no genuine dispute that Reliantcy prepared an inaccurate Background Report and failed to conduct a reasonable investigation. ECF No. 27 at 3-17. The Plaintiff also argues that summary judgment is not warranted on the issues of willfulness and damages, because the issue of willfulness should be reserved for trial and he has presented

sufficient evidence to warrant the recovery of emotional distress damages in this case. *Id*. at 18-21. And so, the Plaintiff requests that the Court deny the Defendants' dispositive motion. *Id*. at 21.

For the reasons that follow, the undisputed material facts in this case show that the Background Report and Revised Background Report contain inaccurate information about the status of the Plaintiff's criminal cases. But there are factual issues in dispute, that can only be properly resolved by the jury, with regards to whether the Background Report and Revised Background Report are misleading because they contain duplicative criminal cases.

The evidence before the Court also makes clear that there are genuine issues in dispute regarding whether Reliantcy had reasonable procedures in place to assure the accuracy of its background reports, and whether the company conducted a reasonable investigation into the Plaintiff's disputes, that preclude summary judgment on these issues. In addition, summary judgment is not warranted on the issue of whether Reliantcy's alleged violation of the FCRA was willful, because this issue should be resolved by the jury. But, the unrebutted evidence in this case makes clear that the Plaintiff does not advance sufficient evidence to support his damages claim based on emotional distress.

Lastly, the parties have shown that it is appropriate to seal Exhibits Q, R and S of the joint record. And so, the Court: (1) GRANTS-IN-PART and DENIES-IN-PART the Plaintiff's motion for partial summary judgment (ECF No. 25); (2) GRANTS-IN-PART and DENIES-IN-PART the Defendants' cross-motion for summary judgment (ECF No. 26); (3) GRANTS the parties' joint motion to seal Exhibits Q, R and S of the joint record (ECF No. 30); (4) DETERMINES that the Background Report and Revised Background Report are inaccurate as to the status of the Plaintiff's criminal cases; and (5) LIMITS the Plaintiff's damages to economic damages.

### A. The Undisputed Material Facts Show The Background Reports Are Inaccurate Regarding The Status Of The Plaintiff's Criminal Cases

As an initial matter, the Plaintiff persuasively argues that the undisputed material facts in this case show that the Background Report and Revised Background Report contain inaccurate information about the status of his criminal cases. To prevail on his Section 1681e FCRA claim, the Plaintiff must show that: (1) the Background Report and Revised Background Report contain inaccurate information and (2) Reliantcy did not follow reasonable procedures to assure maximum possible accuracy of these reports. *Dalton*, 257 F.3d at 415. In this regard, the Fourth Circuit has held that "[a] report is inaccurate when it is

patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Id.* (citation omitted).

In this case, there can be no genuine dispute that the Background Report and Revised Background Report contain inaccurate information about the Plaintiff's criminal cases, because these reports do not state that these cases were resolved *nolle prosequi*. ECF No. 28-1 at 202-205. In this regard, the evidence shows that the Background Report lists several criminal cases associated with the Plaintiff that were brought in either the Maryland circuit courts or district courts. *Id.* For each of these criminal cases, the Background Report provides that the status of the cases is "OPEN." *Id.*

It is also undisputed that the Plaintiff informed Reliantcy that the criminal cases reported in the Background Report were not "open" and had been "expunged," on December 8, 2023, and that the Plaintiff requested that Reliantcy correct this information. ECF No. 25-2 at ¶ 22. It is also undisputed that, after the Plaintiff sent Reliantcy a court document showing that the charges in these cases were "*nolle prosequi*" on December 12, 2023, Reliantcy revised the Background Report to reflect that the status of the Plaintiff's criminal cases is "CLOSED." *Id.* at ¶¶ 28-32. And so, the undisputed material facts make clear that Reliantcy acknowledged that the Background Report was inaccurate with regard to the status of the Plaintiff's criminal cases and that the company revised this report. *Id.*

The undisputed material facts also show that the Revised Background Report is inaccurate with regard to the status of the Plaintiff's criminal cases. While the Revised Background Report states that these cases are "CLOSED," the evidence shows that Reliantcy became aware that the cases had been resolved as "*nolle prosequi*" by December 12, 2023. Reliantcy's Training Guide at the time provides that:

> *Nolle Prosequi* is a Latin phrase meaning "will no longer prosecute." Not guilty. Case was dropped, not enough evidence. Other party is not pursuing case anymore. It amounts to a dismissal of charges by the prosecution. <u>Always release these to the client.</u>

ECF No. 29-1 at 390 (emphasis in original). And so, the undisputed material facts show that the reporting of the Plaintiff's criminal cases as "CLOSED" on the Revised Background Report is incorrect and inconsistent with Reliantcy's own policies and procedures.

Given these undisputed material facts, the Court agrees with the Plaintiff that the Background Report and the Revised Background Report are patently incorrect with regards to the status of his criminal cases. And so, the Court GRANTS the Plaintiff's motion for partial

summary judgment on this issue and DENIES the Defendants' cross-motion for summary judgment on this issue. Fed. R. Civ. P. 56.

The Plaintiff's argument that summary judgment is also warranted on his FCRA claim related to the duplicative reporting of his criminal cases, because the Background Report and Revised Background Report are misleading, is less convincing. The Fourth Circuit has held that "[a] report is inaccurate when it is . . . misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton*, 257 F.3d at 415. And so, the "FCRA requires furnishers to . . . review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." *Saunders v. Branch Banking and Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008).

In his motion for partial summary judgment, the Plaintiff argues that the Background Report and Revised Background Report are both misleading, because these reports contain duplicative criminal records and show 14 criminal cases rather than the 7 cases that were brought against the Plaintiff. ECF No. 25-1 at 19-20. And so, the Plaintiff argues that his criminal records were reported in such a manner as to convey to Challenger that he had been charged with more crimes than was true. *Id.* at 14.

The Court observes that the plain text of the Background Report and Revised Background Report provide some support for the Plaintiff's argument. ECF No. 28-1 at 202-205 (Background Report); ECF No. 28-1 at 234-237 (Revised Background Check). But, as the Defendants correctly observe, there is no dispute in this case that the subject background reports accurately report the case numbers for the Plaintiff's criminal cases and identify these cases as being related. *Id.*; *see also* ECF No. 26-1 at 8.

Perhaps, more importantly, the undisputed material facts show that the reason Challenger initially withdrew its offer of employment to the Plaintiff was due to the open status of these cases, rather than the number of cases reported on the Background Report. *Id.* at 213. In fact, the unrebutted evidence makes clear that Challenger reinstated its offer of employment after receiving the Revised Background Report, which also contains the duplicative list of the Plaintiff's criminal cases. ECF No. 25-2 at ¶ 33.

Given this, a jury should be allowed to weigh the evidence and determine whether the Background Report and Revised Background Repot are misleading in such a way and to such an extent as to be expected to have an adverse effect. *Dalton*, 257 F.3d at 415. And so, the Court must DENY the Plaintiff's motion for partial summary judgment and the Defendants' cross-motion for summary judgment on this issue. Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**B. Summary Judgment Is Not Warranted On The Issue Of Reasonable Procedures**

Turning to the parties' cross-motions on the issue of whether Reliantcy had reasonable procedures in place to ensure the maximum possible accuracy of its background reports, there are genuine issues as to material facts in dispute that also preclude summary judgment on this issue. To prevail on his FCRA claims in this case, the Plaintiff must show, among other things, that Reliantcy did not follow reasonable procedures to assure the accuracy of its background reports. *Dalton*, 257 F.3d at 415. The evidence before the Court makes clear that there are material facts in dispute that must be resolved by the fact finder regarding this issue.

The Plaintiff argues in his motion for partial summary judgment that Reliantcy did not follow reasonable procedures to assure the accuracy of the Background Report and Revised Background Report, because the company had no procedures to exclude duplicative criminal records from its background reports. ECF No. 25-1 at 22 (citing Mr. Mesmer's deposition testimony). Relying on Mr. Mesmer's deposition testimony in this case, the Plaintiff also argues that Reliantcy's procedures are unreasonable, because its nationwide third-party vendor in this case was unreliable and nationwide criminal records searches are also not reliable. *Id*. at 23. But, as the Defendants correctly observe, there is no evidence before the Court to show that Reliantcy had any concerns about the accuracy of Trade House Data's searches, or reason to question the reliability of this vendor, prior to the Plaintiff's dispute of the Background Report. ECF No. 26-1 at 6. Given this, there is a factual dispute in this case about whether Reliantcy had prior notice that the information provided by Trade House Data was inaccurate.

While the Plaintiff points to Reliantcy's Training Guide to show that the company knew that information received from its vendors related to nationwide criminal records searches "are not necessarily accurate," when viewed in the light most favorable to the Defendants, this evidence is not sufficient to show that Reliantcy knew that Trade House Data was unreliable, or that nationwide criminal records searches were not reliable.

Given this, the jury must consider the evidence and resolve this factual dispute. And so, the Court DENIES the Plaintiff's motion for summary judgment and DENIES the Defendants' cross-motion for summary judgment on this issue. Fed. R. Civ. P. 56; *Scott v. Resolve Partners, LLC*, No. 19-1077, 2023 WL 6388202, at *5 (M.D.N.C. Sep. 29, 2023) (holding that whether a CRA followed reasonable procedures "will be a jury question in the overwhelming majority of cases").

### C. Summary Judgment Is Unwarranted On The Issue Of Whether Reliantcy Conducted A Reasonable Investigation

The parties cross-motion on the issue of whether Reliantcy conducted a reasonable investigation are also unconvincing. To prevail on his Section 1681i(a) FRCA claim, the Plaintiff must prove, among other things, that Reliantcy failed to conduct a reasonable investigation of his disputes about the Background Report and Revised Background Report. *Myrick v. Equifax Info. Servs, LLC*, No. 15-cv-00562, 2017 WL 3324467, at *5 (E.D.N.C. Aug. 3, 2017). While the FCRA does not define the term "reasonable reinvestigation," the Fourth Circuit has explained that reasonableness is assessed based upon weighing "the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information." *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 432 (4th Cir. 2004) (quotation omitted). And so, "judging the reasonableness of a consumer reporting agency's reinvestigation is normally within the province of the fact-finder, [but] summary judgment may be appropriate where a plaintiff has failed to adduce evidence that would tend to prove that a consumer reporting agency's reinvestigation was unreasonable." *Thomas*, 2006 WL 8457059, at *5.

Here, there are material facts in dispute about whether Reliantcy should have conducted a county-specific search of the Plaintiff's criminal records, and whether Reliantcy should have discovered the alleged inaccuracies in the Background Report on its own once the Plaintiff lodged his initial dispute on December 3, 2023, that preclude summary judgment on this issue. Notably, the Plaintiff argues that Reliantcy had sufficient information on December 3, 2023, to investigate the status and related nature of his criminal cases, but the company failed to do so. ECF No. 25-2 at 26. The Plaintiff also argues that there is "no evidence" that Reliantcy conducted an investigation in response to his December 12, 2023, dispute. *Id.* at 28.

But it is also undisputed that the court documents that the Plaintiff initially provided to Reliantcy did not contain his name or case numbers. ECF No. 25-2 at ¶ 26. Given this evidence, the Defendants argue that Reliantcy's decision to request more information from the Plaintiff before conducting an investigation was reasonable. ECF No. 26-1 at 9. It is also undisputed that Reliantcy conducted and completed its investigation and issued the Revised Background Report in two weeks, after receiving the Plaintiff's initial dispute. *Id.* ¶ 28-32.

Given this evidence, the undisputed material facts do not show that either party is entitled to summary judgment on the issue of the reasonableness of Reliantcy's investigation.

And so, the Court DENIES the Plaintiff's motion for summary judgment and DENIES the Defendants' cross-motion for summary judgment on this issue. Fed. R. Civ. P. 56.

**D. The Jury Should Determine Willfulness**

The Court also agrees with the Plaintiff that the jury should decide whether the evidence shows that Reliantcy violated the FCRA willfully in connection with this case. To show a willful violation of the FCRA, the Plaintiff must show that the Defendants knowingly and intentionally committed an act with conscious disregard for his rights. *Ausherman v Bank of Am Corp.*, 352 F.3d 896, 900 (4th Cir. 2003).

Here, again, the parties rely on different evidence to support their respective positions on whether the Defendants' conduct in this case was willful. Notably, the Defendants observe that there is no evidence in this case of a pattern of FCRA violations, or reporting errors, to support finding of a willful violation of the FCRA. ECF No. 26-1 at 12. As discussed above, it is also undisputed in this case that Reliantcy issued the Revised Background Report within two weeks of receiving the Plaintiff's initial dispute.

On the other hand, the Plaintiff points to evidence showing, among other things, that Reliantcy lacked a policy to address duplicative criminal records, and that nationwide criminal background searches are unreliable, to prove that the Defendants' alleged FCRA violations were willful. ECF No. 27 at 18-19.

Given this, it is appropriate for the jury to consider this evidence and decide whether any FCRA violations in this case were willful. And so, the Court must also DENY the Plaintiff's motion for summary judgment and DENY the Defendants' cross-motion for summary judgment on this issue. Fed. R. Civ. P. 56.

**E. The Plaintiff's Damages Are Limited To Economic Losses**

The Defendants' cross-motion for summary judgment is, however, on firmer footing with regard to the Plaintiff's requests to recover non-economic damages related to emotional distress in this case. It is well-established that the Plaintiff may recover actual damages for humiliation and mental distress for a FCRA violation. *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 500 (4th Cir. 2007). Given this, the Fourth Circuit has held that "a plaintiff's testimony can provide sufficient evidence to support an emotional distress award . . . ." *Id.* at 503 (internal quotation omitted). But a FCRA plaintiff must "reasonably and sufficiently explain the circumstances of the injury and not resort to mere conclusory statements," to recover such damages. *Id.*

In this case, the Defendants argue with persuasion that the Plaintiff has not advanced sufficient evidence to support his claim for damages, based upon his alleged anxiety, loss of

sleep, depression, embarrassment and mental anguish, due to the inaccuracies in the Background Report and Revised Background Report. While the Plaintiff argues that his deposition testimony supports this damages claim, and that "he has witnesses who will testify at trial that [he] suffered [emotional distress] as a direct result of Reliantcy's violations of the FCRA, he points to no evidence beyond the subject deposition testimony to support this claim. ECF No. 27 at 26. Nor does the Plaintiff identify his witnesses on this topic or explain the nature of their testimony. And so, there is no evidence before the Court to independently corroborate this claim. *See* ECF No. 28-1 at 175-176 (Plaintiff testifying that his current treatment for anxiety and depression is not related to this case.)

Given this, the Plaintiff has not identified sufficient evidence to support his claim for non-economic damages. And so, the Court GRANTS the Defendants' cross motion for summary judgment on this final issue. Fed. R. Civ. P. 56.

### F. The Court Grants The Parties' Motion To Seal

As a final matter, the Court GRANTS the parties' consent motion to seal Exhibits Q, R, and S of the joint record in this case. A review of these exhibits shows that they contain business proprietary and/or confidential information that must be filed under seal pursuant to the Protective Order entered in this case on January 29, 2025 (ECF No. 18). The Court is also satisfied that there is no less restrictive alternative to sealing these exhibits that would protect the confidentiality of this information. And so, the Court GRANTS the parties' consent motion to seal Exhibits Q, R, and S of the joint record.

## V. CONCLUSION

In light of the foregoing, the Court:

(1) **GRANTS-IN-PART** and **DENIES-IN-PART** the Plaintiff's motion for partial summary judgment (ECF No. 25);

(2) **GRANTS-IN-PART** and **DENIES-IN-PART** the Defendants' cross-motion for summary judgment (ECF No. 26);

(3) **GRANTS** the parties' joint motion to seal Exhibits Q, R and S of the joint record (ECF No. 30);

(4) **DETERMINES** that the Background Report and Revised Background Report are inaccurate as to the status of the Plaintiff's criminal cases; and

(5) **LIMITS** the Plaintiff's damages to economic damages.

An Order consistent with this Memorandum Opinion issued on September 9, 2026.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge